**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
:
In re:                                         :   Chapter 11
:
GCX Limited, et al.,[1]                         :   Case No. 19-12031 (CSS)
:
        Debtors.                            :   Jointly Administered
:
:   **Hearing Date: February 6, 2020 at 1:00 p.m. (ET)**
---------------------------------------------------------------x   **Objection Deadline: January 30, 2020 at 4:00 p.m. (ET)**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## APPROVING SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

GCX Limited ("GCX") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement (the "Settlement") between the Debtors and William Barney ("Mr. Barney") in accordance with the terms of that certain letter agreement (the "Settlement Agreement"), dated as of January 6, 2020, by and between the Debtors and Mr. Barney. A copy of the Settlement Agreement is attached hereto as **Exhibit B**. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: GCX Limited (n/a); FLAG Telecom Development Limited (n/a); FLAG Telecom Group Services Limited (n/a); FLAG Telecom Ireland Network DAC (n/a); FLAG Telecom Network Services DAC (n/a); FLAG Telecom Network USA Limited (2662); Reliance FLAG Atlantic France SAS (n/a); Reliance FLAG Telecom Ireland DAC (n/a); Reliance Globalcom Limited (n/a); Reliance Vanco Group limited (n/a); Vanco Australasia Pty Limited (n/a); Vanco GmbH (n/a); Vanco SAS (n/a); Vanco UK Limited (n/a); Vanco US, LLC (0221); and VNO Direct Limited (n/a). The location of Debtor FLAG Telecom Network USA Limited's principal place of business and the Debtors' service address in these chapter 11 cases is 3190 S. Vaughn Way, # 550, Aurora, CO 80014.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Debtors consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a final order by the Court on this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein is Bankruptcy Rule 9019.

**Background**

**A.    General Background**

4. On September 15, 2019 (the "Petition Date"), the Debtors commenced their bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Cases. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. A description of the events leading up to the Petition Date and the facts and circumstances relating to the Chapter 11 Cases are set forth in the *Declaration of*

25870019.1

*Michael Katzenstein, Chief Restructuring Officer of GCX Limited, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 13].

6. On September 15, 2019, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of GCX Limited and its Debtor Affiliates,* [Docket No. 12], as modified on December 2, 2019 [Docket No. 169] (as amended and as may be further amended, modified, or supplemented the "Plan"),[2] which provides for, among other things, the assumption upon the Effective Date of the Key Employee Plans set forth in Exhibit B to the Plan. On September 15, 2019, the Debtors also filed the related disclosure statement [Docket No. 13] (the "Disclosure Statement").

7. On December 4, 2019, the Court entered an order [Docket No. 203] approving, among other things, the Disclosure Statement and confirming the Plan. The Debtors, along with their advisors and the members of the ad hoc group of holders of the 7.00% Senior Secured Notes Due 2019 (the "Ad Hoc Noteholder Group"), are currently working diligently toward consummation of the reorganization transactions set forth in the Plan.

B. **Prepetition Relationship between the Debtors and Mr. Barney**

8. Under an Employment Agreement dated as of July 11, 2014 (as amended, the "Employment Agreement"), Mr. Barney is a director of GCX and serves as Vice Chairman and Chief Executive Officer of GCX and its subsidiaries.

9. Pursuant to the terms of the Employment Agreement, Mr. Barney is entitled to, among other things, (a) an annual salary of $450,000, (b) an annual bonus of not less than $450,000, (c) rental reimbursements of approximately $34,000 per month for the cost of housing Mr. Barney and his family in Hong Kong,[3] (d) a cost of living allowance of $5,000 per

---

[2] Except as otherwise provided herein, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[3] As discussed below, the Debtors are directly obligated on the lease for Mr. Barney's rental housing.

25870019.1

3

month, (e) an automobile allowance of $2,500 per month, (f) reimbursement for all school and tuition costs associated with sending Mr. Barney's children to the Hong Kong American School or a similar institution, (g) tax equalization benefits to indemnify Mr. Barney for all taxes, fees, and charges related to payments or benefits received under the Employment Agreement, (h) medical, dental, and related health benefits, (i) reimbursement for all fees and related costs for Mr. Barney's membership in the American Club in Hong Kong, and (j) five weeks paid vacation per year and related travel benefits.

10.     The Employment Agreement is governed by the laws of the Hong Kong Special Administrative Region of the People's Republic of China.  Absent a showing of cause as set forth in section 9 of the Employment Ordinance of Hong Kong, the Employment Agreement may only be terminated by GCX upon 12 months' notice to Mr. Barney or upon payment in lieu of such notice as provided by section 7 of the Employment Ordinance (a "Payment-In-Lieu").

C.      **Negotiation of the Settlement Agreement**

11.     Mr. Barney and the Debtors, in consultation with their respective advisors and the Ad Hoc Noteholder Group (who, together with the other holders of Senior Secured Note Claims, will receive the equity interests of the Reorganized Debtors under the Plan), have agreed that the Plan's confirmation marks an appropriate juncture for a change in the Company's senior leadership team.  In discussions regarding Mr. Barney's separation from the Company, significant disagreements have arisen about the terms of that separation.  To avoid costly and protracted litigation that would only diminish the Debtors' estates and disrupt the Debtors' reorganization efforts, the Debtors' independent directors, with the advice of the Debtors' advisors, engaged in good-faith, arms'-length negotiations with Mr. Barney.  Those negotiations culminated in a consensual resolution embodied in the Settlement.

12. The Settlement provides the Debtors with significant benefits to which they would not be entitled absent the Settlement. In particular, the Settlement Agreement provides the Debtors with, among other things, the Cooperation Covenant and the Restrictive Covenants (each defined below) that will, respectively, secure Mr. Barney's cooperation and prevent Mr. Barney from soliciting the Debtors' employees or contractors, or otherwise interfering with the Debtors' business, during this critical phase of the Debtors' reorganization. The Settlement also provides for a mutual release of certain claims between the Debtors and Mr. Barney.

13. Prompt entry into the Settlement Agreement is critical to ensure that the Debtors maintain clear leadership and stability as they work to conclude their reorganization efforts, thereby avoiding any further disruption to their customers or employees. The Settlement represents the best obtainable means to resolve the disputes with Mr. Barney regarding the terms of his separation and it is supported by the Ad Hoc Noteholder Group, which represents the Debtors' primary impaired creditor constituency in these Chapter 11 Cases.

**Summary of the Settlement Agreement**

14. The Debtors have determined, in their business judgment, that the best attainable outcome under the present circumstances is to resolve consensually, in accordance with the Settlement Agreement, the disputes that have arisen between the Debtors and Mr. Barney regarding his separation from GCX. The principal terms of the Settlement Agreement are as follows:[4]

(a) Mr. Barney shall resign, effective as of the Separation Date, from all positions that Mr. Barney holds with GCX or its affiliates.

---

[4] This summary of the Settlement Agreement is qualified in its entirety by the Settlement Agreement. If there is any inconsistency between the Settlement Agreement and the summary contained herein, the Settlement Agreement shall control. Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

25870019.1

(b) Mr. Barney shall be entitled to the following payments and reimbursements, in each case subject to withholding in accordance with applicable law:

 (i) $1,300,000, to be paid by GCX as follows: $700,000 to be paid on the date of the Bankruptcy Approval, $300,000 to be paid on the 6-month anniversary of the Bankruptcy Approval, and the remaining $300,000 to be paid on the 12-month anniversary of the Bankruptcy Approval (collectively, the "Settlement Payments");

 (ii) all accrued and unpaid wages and other benefits due to Mr. Barney under the Employment Agreement for the pay period in which the date of the Settlement Agreement falls and any subsequent pay period through the Separation Date; provided, however, that Mr. Barney waives his rights, if any, to continue to accrue vacation and paid time off;

 (iii) reimbursement, for twelve (12) months after the Separation Date, for COBRA premiums if Mr. Barney elects to continue U.S. medical and dental benefits for himself and his eligible dependents under applicable law;

 (iv) rental reimbursement for twelve (12) months following the Separation Date, in an amount up to HK$265,000 (approximately $34,000) per month, or, if shorter, until Mr. Barney is no longer a Hong Kong resident (the "Rental Reimbursement"); and

 (v) reimbursement of school and tuition fees to send Mr. Barney's children to the Hong Kong International School for twelve (12) months following the Separation Date, or, if shorter, so long as Mr. Barney's children remain enrolled at the Hong Kong International School, up to a maximum amount of $91,000 (the "School Reimbursement").

(c) Mr. Barney shall provide such cooperation and business support at such mutually convenient times and locations as GCX may reasonably request, after taking into account Mr. Barney's professional and personal obligations at the relevant time, for a period of twelve (12) months following the Separation Date; provided, however, that GCX shall request such support in advance and shall reasonably accommodate Mr. Barney's other business commitments, and provided further that GCX shall reimburse Mr. Barney for any reasonable expenses, approved by GCX in advance, that Mr. Barney incurs in connection with providing such cooperation and support in accordance with GCX's standard expense reimbursement policies and procedures. The provisions of the Settlement Agreement referenced in this paragraph 14(c) shall be referred to as the "Cooperation Covenant."

(d) Consistent with the Employment Agreement, GCX shall provide Mr. Barney with coverage under a policy of directors' and officers' liability insurance, on terms no less favorable than those provided to other members of GCX's board of directors, for a period of at least six years.

(e)     Mr. Barney shall not make, or cause or assist any other person to make, any statement or other communication to any third party which is intended to impugn or attack, or to be otherwise critical of, the reputation, business, or character of GCX, its affiliates, or any of their respective directors, officers, representatives, agents, employees, contractors or other service providers. GCX shall not make, in any authorized corporate communications to third parties, or cause or assist any other person to make, any statement or other communication to any third party which is intended to impugn or attack, or to be otherwise critical of, Mr. Barney's reputation, business, or character; provided that GCX shall not be prohibited from making statements or other communications in connection with any claim or cause of action that is not being released pursuant to the Plan. The provisions of the Settlement Agreement referenced in this paragraph 14(e) shall be referred to as the "Non-Disparagement Covenant."

(f)     For twelve (12) months following the Separation Date, Mr. Barney shall not directly or indirectly solicit, induce, recruit, encourage, take away, or hire (or attempt any of the foregoing actions) or otherwise cause (or attempt to cause) any individual or entity who, to Mr. Barney's actual knowledge, is, or was during the then most recent six (6)-month period, an officer, representative, agent, director, employee, or independent contractor of GCX or any of its affiliates to leave his, her, or its employment or engagement with GCX or a GCX affiliate, either for employment or service with Mr. Barney or with any other entity or person, or otherwise interfere with or disrupt (or attempt to disrupt) the employment or service relationship between any such individual or entity and GCX and its affiliates. The provisions of the Settlement Agreement referenced in this paragraph 14(f) shall be referred to as the "Non-Solicitation Covenant."

(g)     In addition to Mr. Barney's obligations to continue to protect the confidential information of GCX and its affiliates, Mr. Barney shall not, for twelve (12) months following the Separation Date, interfere with the business plans and operations of GCX and its affiliates as to which Mr. Barney has actual knowledge. The provisions of the Settlement Agreement referenced in this paragraph 14(g) shall be referred to as the "Non-Interference Covenant" and, together with the Non-Disparagement Covenant and the Non-Solicitation Covenant, the "Restrictive Covenants."

(h)     Effective from the date of the Bankruptcy Approval, (i) Mr. Barney unconditionally and irrevocably waives, releases, and discharges GCX and the other Releasees from all Claims, and (ii) except for proceedings to enforce the terms of the Settlement Agreement, Mr. Barney's release operates as an absolute bar to all Claims made by Mr. Barney, or in Mr. Barney's name or on Mr. Barney's behalf, against GCX or the other Releasees. The provisions of the Settlement Agreement referenced in this paragraph 14(h) shall be referred to as the "Barney Release."

(i)     The terms of Sections 10.6, 10.7, and 10.8 of the Plan, as revised in an amended version of the Plan as contemplated by **Exhibit I** to the Settlement Agreement, as they apply to Mr. Barney, are incorporated into the Settlement Agreement.

      Notwithstanding that the Effective Date of the Plan has not yet occurred, and regardless of whether the Effective Date ever occurs, the releases, exculpations, and injunctions incorporated above shall be effective to their fullest extent as to Mr. Barney, and enforceable by Mr. Barney against GCX as of the date of the Bankruptcy Approval.

(j)    GCX shall reimburse Mr. Barney up to $50,000 for reasonable legal fees that Mr. Barney incurs in connection with obtaining advice on Mr. Barney's separation from the Debtors and the review and execution of the Settlement Agreement.

## Relief Requested

15.    By this Motion, the Debtors seek entry of and order, substantially in the form attached hereto as **Exhibit A**, approving the Settlement pursuant to Bankruptcy Rule 9019.

## Basis for Relief Requested

16.    Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)).

17.    Approving a settlement "is within the discretion of the bankruptcy court." *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate." *Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). *See also Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). It is not necessary that the settlement be the best possible compromise, only that it attains at least the lowest level of the zone of reasonableness. *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 613 (2d Cir. 1983); *In re Capmark*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *see also Official Unsecured Creditors' Comm. of Pa. Truck Lines,*

*Inc. v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd* 8 F.3d 812 (3d Cir. 1993).

18. The Third Circuit has enumerated four factors to be considered when evaluating a proposed settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *accord In re Nutraquest*, 434 F.3d at 644.

19. In this case, each of the factors enumerated above (except for factor number two, which is not relevant to this case) weighs strongly in favor of approving the settlement embodied in the Settlement Agreement. If the Debtors were forced to litigate Mr. Barney's claims regarding his separation, the exact outcome of such litigation is highly uncertain; but what is virtually certain is that the Debtors would be required to pay Mr. Barney some, likely substantial, amount in relation to his separation from the Debtors. In addition, the Debtors would be required to expend significant resources, both in legal fees and in the time and attention of its management, associated with pursuing such litigation, all of which would be better applied to the Debtors' continued operation of their businesses and ongoing restructuring efforts.

20. The Debtors believe that the overall monetary costs of the Settlement Agreement are not materially greater (and, in fact, would likely be significantly less) than the total costs associated with resolving any separation disputes with Mr. Barney through litigation, particularly under Hong Kong law.[5] In addition, under the negotiated Settlement, the Debtors and their estates

---

[5] The Debtors estimate that the total amount of payments due under the Settlement Agreement will be approximately $1,885,000, consisting primarily of (a) the Settlement Payments ($1,300,000), (b) the Rental Reimbursement (up to approximately $408,000), and (c) the School Reimbursement (up to $91,000). By comparison, if the Debtors ended their relationship with Mr. Barney pursuant to the Key Employee Plan that was approved as part of the confirmed Plan, Mr. Barney would receive a payment of $1,300,000. *See* Plan at Exhibit B; *see also Notice of Filing of Supplement to Joint Prepackaged Chapter 11 Plan of GCX Limited and Its Debtor*

25870019.1

will receive the substantial benefits of the Cooperation Covenant, the Restrictive Covenants, and the Barney Release.  Without these protections, the Debtors' estates would be vulnerable to significant disturbances that could severely and negatively impact the Debtors' business just as they are working to consummate a successful emergence from these Chapter 11 Cases.

21.  Further, for each day that the separation disputes between the Debtors and Mr. Barney are not resolved through the Settlement, the Debtors' business is susceptible to disruptions due to a lack of clearly established leadership.  Such instability likely would have a debilitating effect on the morale of the Debtors' employees and the confidence of the Debtors' customers, each of which could only serve to harm the value of the Debtors' estates and their ongoing reorganization efforts.

22.  Finally, the interest of the Debtors' creditors clearly weighs in favor of approval of the Settlement because the Ad Hoc Noteholder Group, which represents the primary class of impaired creditors under the Plan and, along with the other Senior Secured Noteholders, will receive the equity interests of the Reorganized Debtors upon the Effective Date, supports the Settlement Agreement.

23.  The Debtors believe that the compromise embodied in the terms of the Settlement Agreement is in the best interests of the Debtors and their estates because it, among other things,

---

*Affiliates* [Docket No. 156] at Exhibit J. In addition, because the Debtors are directly obligated under the lease agreement that is the subject of the Rental Reimbursement, the Debtors would still have to pay the rental payments of approximately $408,000 if Mr. Barney's disputes were resolved outside of the Settlement Agreement. As such, the Rental Reimbursement expense is essentially a sunk cost for the Debtors and, therefore, the total costs of resolving Mr. Barney's disputes outside of the Settlement Agreement would not be materially different from those under the Settlement Agreement. Similarly, the costs under the existing Employment Agreement are not materially less than the payments required under the Settlement Agreement and could expose the Debtors to significant legal costs associated with negotiating and enforcing a Payment-In-Lieu under Hong Kong law. It is also worth noting that, if Mr. Barney's disputes regarding his separation are not resolved pursuant to the Settlement Agreement, Mr. Barney would be entitled to file a claim in the Debtors' Chapter 11 Cases for damages arising under the Employment Agreement and, pursuant to the confirmed Plan, allowed General Unsecured Claims are unimpaired.

25870019.1

(a) relieves the Debtors' estates of ongoing and potential liabilities under the Employment Agreement; (b) avoids the burdens and uncertainties of litigating claims arising out of Mr. Barney's separation from the Debtors, including the expenses and difficulties attendant to negotiating and enforcing such a separation under Hong Kong law; (c) represents reasonable compromises of the rights and obligations of the parties; and (d) provides the Debtors with the substantial benefits of the Cooperation Covenant, the Restrictive Covenants, and the Barney Release. The Settlement Agreement is fair, it was negotiated in good faith and at arms' length, and it represents the best obtainable results under the circumstances. Similar agreements have been approved in other cases in this District. *See, e.g.*, *In re Rotech Healthcare, Inc.*, Case No. 13-10741 (PJW) (Bankr. D. Del. Oct. 9, 2013) [Docket No. 1136] (approving separation agreement with senior officer); *In re CCS Medical, Inc.*, Case No. 09-12390 (CSS) (Bankr. D. Del. Sept. 9, 2009) [Docket No. 385] (same). Based upon the foregoing, the Debtors believe that the Settlement Agreement provides a meaningful benefit to their estates and their stakeholders and that it should be approved pursuant to Bankruptcy Rule 9019.

### Request for Waiver of Bankruptcy Rule 6004(h)

24. The Debtors respectfully request a waiver of the fourteen (14) day stay of effectiveness imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take effect immediately upon entry of an order approving this Motion.

### Notice

25. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the DIP Agent; (iii) counsel to the Ad Hoc Noteholder Group; (iv) the Debtors' 30 largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (v) counsel to Mr. Barney; and (vi) those parties who have formally filed

25870019.1

requests for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 16, 2020
Wilmington, Delaware

*/s/ Jared W. Kochenash*
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
Jaime Luton Chapman (No. 4936)
Jared W. Kochenash (No. 6557)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

Chris L. Dickerson (admitted *pro hac vice*)
Brendan M. Gage (admitted *pro hac vice*)
Robert A. Dixon Jr. (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (302) 499-6100

- and -

Todd M. Schwartz (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
1117 South California Avenue
Palo Alto, California 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

*Counsel to the Debtors and Debtors in Possession*